### PEOPLE v. GORDON.

(Supreme Court, Appellate Division, Second Department. June 11, 1915.)

LARCENY ⬤══60—PROSECUTION—EVIDENCE—SUFFICIENCY.

    In a prosecution for petit larceny, evidence *held* insufficient to sustain accused's defense of claim of title, urged in accordance with Penal Law (Consol. Laws, c. 40) § 1306.

    [Ed. Note.—For other cases, see Larceny, Cent. Dig. §§ 156–158; Dec. Dig. ⬤══60.]

Appeal from Court of Special Sessions of City of New York.

Irving Gordon was convicted of petit larceny in the Court of Spe-cial Sessions, and he appeals. The Supreme Court at Special Term granted a certificate of reasonable doubt. Affirmed.

Argued before JENKS, P. J., and CARR, STAPLETON, MILLS, and RICH, JJ.

Reuben Brown, of Brooklyn (Henry J. Wyatt, of New York City, on the brief), for appellant.

Harry G. Anderson, Asst. Dist. Atty., of Brooklyn (James C. Crop-sey, Dist. Atty., of Brooklyn, on the brief), for the People.

CARR, J. The defendant has been convicted of the crime of petit larceny, and sentenced to imprisonment for 30 days. From the judg-ment of conviction, this appeal was taken. He was tried before the Court of Special Sessions in the borough of Brooklyn. One of the Justices dissented from the judgment of conviction. The Supreme Court at Special Term granted a certificate of reasonable doubt.

The defendant is a young man, just beginning life, quite bright, or, as the dissenting justice of the Court of Special Sessions said when announcing his vote: "He is a pretty smooth article. He had better watch himself. I am voting for an acquittal, but that is my moral view." He was charged with having retained with criminal intent the sum of $21.60, which he had received as the agent of the Howard M. Thomas Company. The defendant sold some groceries for Thom-as to one Sam Singer of Brooklyn, and collected the purchase price in two installments, the last one being for $21.60. He failed to ac-

---

⬤══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

count to Thomas for this collection, and his failure resulted in this prosecution. The proofs adduced by the prosecution were to the effect that the defendant, Gordon, had been hired as a salesman to sell coffees, teas, canned goods, etc., in Brooklyn and up state. He was to pick out his own customers, and his compensation was to be one-half the profits on his own sales, subject, however, to the burden of bearing one-half the losses from the "bad debts" arising from the failure of his own customers to pay for the goods. When he got an order, he turned it in to the Thomas people. They shipped the goods and billed them in the name of the Thomas Company. The defendant made collections and turned in the moneys collected, generally by checks drawn by himself. Sometimes he received checks payable to order of the Thomas Company, and these he indorsed in the name of the Thomas Company and deposited to his own account. He testified that Thomas knew of this practice, and approved it. Thomas testified that he discovered the defendant's practice, without any information as to it from the defendant, and immediately forbade its continuance. Settlements were made usually between Thomas and the defendant on the 15th and 30th of each month. One of the checks given by the defendant on account of his collections, for $248.31, was returned dishonored. Thomas had a bookkeeper, Hayden, who began to suspect that the defendant was not making full returns of his collections. They traced the customers of the defendant who were not credited, and they found a number who claimed to have paid the amount of their bills to the defendant, Gordon. Hayden made a written list of the customers and the amounts, and confronted the defendant with it, who took the list, copied it in his own handwriting, and returned the copy to Hayden, with an indorsement "I. O. U. H. M. Thomas Co. $389.62. Irving Gordon." This list did not include the collections from Singer. Hayden pressed the defendant for a settlement. He promised to settle and asked for another chance. Shortly afterwards, the defendant was discharged, and thereafter the Thomas Company learned of the collection from Singer, which, according to Singer's testimony, was made in cash about November 10, 1914. After the defendant was discharged, he sent Hayden a further list of collections made by him, including the Singer payments, amounting to $282.16, but he charged against this amount items as follows: "Com. due for Sept. Oct. Nov. $190.00. Traveling expenses $95"—making a total of $285, and setting up a claim as follows: "Due Gordon 2.94." He added to this list a clause as follows: "Above list of collections that I have collected and have deducted my commission and traveling expenses. Irving Gordon."

The Thomas Company put its case into the hands of an attorney, Drucker. He testified that the defendant called upon him on request, and a mutual discussion took place as to the controversy about the collections, and that the defendant then claimed that Thomas owed him nearly as much as the amount which he (Gordon) had retained for his share of the profits which he had "left in the business" at the request of Thomas, and offered to settle the dispute by paying Thomas $50, but that he (Drucker) declined to discuss settlement or adjustment

unless Gordon would pay over the full amount of his collections. This conversation is denied by the defendant. Running through the defendant's testimony are mingled claims of an indebtedness of Thomas to him which justified the retention of the moneys by him, and a claim that he believed he was, and in fact and law was actually, a partner of Thomas and had as much right to the moneys as had Thomas. The case perplexed some members of the trial court, as the record discloses.

I think this case does not fall within section 1306 of the Penal Law, upon which the certificate of reasonable doubt was granted. The funds collected came lawfully into the possession of the defendant, but their retention was not open. The defendant did not notify seasonably the Thomas Company of the collections and assert a claim of right to them. His whole conduct was underhand and surreptitious, and he gave no information until his previous conduct in regard to the collections had been discovered in part by the inquiry of Thomas Company among his personal customers. The claim of a partnership between him and the Thomas Company seems to be an afterthought, brought into use for a defense against a criminal prosecution. As to the finding of fact by the trial court as to his intent in the retention of the moneys, I do not recommend interference by this court. The appellant contends, however, that the circumstance that he was to receive half the profits on his sales to the customers of his procurement and to bear half the losses arising from the failure of such customers to pay for the goods after the sale and delivery did, by operation of law, make him a partner of Thomas as to the specific transactions, and that, therefore, morals apart, there could be no legal larceny, as the sums of money collected were as much his in law as they were of Thomas. While the general rule is unquestionably that an agreement to share profits and losses is a badge of partnership, yet it is not a conclusive presumption, but must be considered in the light of all the surrounding circumstances. Here the Thomas Company supplied the goods on the orders turned in by the defendant. He was to receive one-half the profits on his own sales. He was to select his own customers, and he practically guaranteed the reliability of such customers, to the extent of one-half the amount of the price of the goods sold. These circumstances did not, by mere operation of law, make him a partner with the Thomas Company as to the specific transactions. I am convinced that he never thought he was a partner until he got overdeep in his retention of collections.

I recommend that the judgment be affirmed.

Judgment of conviction of the court of Special Sessions affirmed. All concur.